IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| EDWIN ALLEN ROBERTS,        ) | |
|              Plaintiff,    ) | |
| ) | |
| v.                                                       ) | CIVIL ACTION NO. 2:14-26507 |
| ) | |
| CAROLYN W. COLVIN,              ) | |
| Acting Commissioner of Social Security, ) | |
|              Defendant.    ) | |

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Orders entered October 6, 2014, and January 5, 2016 (Document No. 4 and 15.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 13.), and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Edwin Allen Roberts (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on April 13, 2011 (protective filing date), alleging disability as of March 31, 2011,[1] due to problems with his knees, lower back, shoulders, knees, right hip, and both elbows.[2] (Tr. at 11, 253-59, 260-65, 312, 317.) The claims were denied initially and upon

---

[1] At the administrative hearing, Claimant amended his alleged onset date to April 1, 2011. (Tr. at 11, 32.)

[2] On his form Disability Report - Appeal, dated August 8, 2011, Claimant asserted that problems with his back and hands had worsened. (Tr. at 362.)

reconsideration. (Tr. at 99-102, 120-22, 126-28, 131-33, 137-39, 144-46, 147-49.) On August 3, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 150-51.) A hearing was held on May 13, 2013, before the Honorable Jack Penca. (Tr. at 27-73.) By decision dated June 17, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-22.) The ALJ's decision became the final decision of the Commissioner on August 5, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on October 3, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§

2

404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

      which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

      (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

      (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the amended alleged onset date, April 1, 2011. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease, status post arthroscopic knee surgery and chronic obstructive pulmonary disease," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work, as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never crawl or climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel and crouch. He must avoid concentrated exposure to extreme cold, extreme

>heat, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation and hazards, such as machinery and heights.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 20, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a non-technical hand assembler, housekeeper, and mail clerk, at the unskilled, light level of exertion. (Tr. at 21-22, Finding No. 10.) On this basis, benefits were denied. (Tr. at 22, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on February 7, 1959, and was 54 years old at the time of the

administrative hearing, May 13, 2013. (Tr. at 21, 253, 260.) The ALJ found that Claimant had a tenth grade, or limited education and was able to communicate in English. (Tr. at 21, 316, 318.) In the past, he worked as a dishwasher and general construction worker. (Tr. at 21, 62, 318.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence, and discusses it below in relation to Claimant's arguments.

On October 4, 2010, Claimant reported pain, weakness, and numbness in his back, hands, hips, legs, and shoulders, following a motor vehicle accident on September 12, 2010, at which time he was struck by a vehicle while riding his bicycle. (Tr. at 405-06.) On December 7, 2012, x-rays were obtained of the right hand for pain and suspected arthritis with a history of previous injury five years ago. (Tr. at 466.) The x-rays of Claimant's right hand demonstrated probable chronic posttraumatic deformities involving the fifth metacarpal and second proximal phalanx, mild degenerative changes at the first through third metacarpal joints and first interpharyngeal joint, and no definite acute fracture or dislocation. (Tr. at 455, 476.) On December 11, 2012, Claimant's primary care physician, Dr. Roger Anderson, M.D., noted mild edema of the right hand with some tenderness and pain. (Tr. at 461-62, 474.)

On February 5, 2013, Claimant complained of right hand pain and bilateral hand cramps. (Tr. at 461.) On March 5, 2013, Claimant reported continued and worsening hand cramps. (Tr. at 460.) His primary care physician prescribed pain medication. (Tr. at 460-61.) Dr. Anderson also noted that Claimant suffered from anxiety. (Tr. at 460-61.) On April 4, 2013, Claimant reported relief from pain medications, though he did not specify the specific relief. (Tr. at 459.) On May 2, 2013, Dr. Anderson diagnosed anxiety. (Tr. at 473.)

Claimant sought treatment in April 2012, for alcohol addiction. (Tr. at 439-47.) Claimant

was evaluated by Leshia McClure, M.A., a therapist. (Id.) Ms. McClure noted on examination that Claimant was oriented, with normal speech and motor skills, an appropriate affect and depressed mood, and tangential thought processes. (Tr. at 447.) He reported that he was homeless and stayed with different friends. (Id.) Claimant reported that he had been in alcohol treatment programs three times in the last three years for detox only. (Tr. at 443.) He stated that he spent $40 on alcohol in the last 30 days and was considerably troubled or bothered by alcohol problems. (Id.) Claimant reported that he was intoxicated 20 days out of the last 30 days and drank three to four beers a day. (Tr. at 442.) Claimant also stated that he smoked marijuana five or six times in the last 30 days and last smoked three days earlier. (Id.) Ms. McClure recommended motivational recovery counseling. (Tr. at 447.)

Claimant testified at the administrative hearing that he stopped treatment at Westbrook for alcohol addiction due to a conflict with his prescription pain contract with his physician. (Tr. at 47-48.) He also testified that he had abstained from illegal substances. (Tr. at 49.)

*Additional Evidence Submitted to the Appeals Council*:

Claimant submitted a Psychological Report from John R. Atkinson, Jr., M.A., a licensed clinical psychologist, dated February 16, 2012. (Tr. at 513-21.) On February 8, 2012, Mr. Atkinson conducted a Psychological Evaluation to assist in determining Claimant's eligibility for Medicaid benefits. (Tr. at 513.) Mr. Atkinson observed that Claimant's attitude was pleasant, open frank, and candid, but somewhat preoccupied and digressive. (Id.) Claimant listened marginally, talked on his cell phone during the examination, cooperated adequately, and exhibited signs of distractibility. (Id.) Claimant reported that he had never received formal treatment for mental or emotional problems, with the exception of substance abuse treatment. (Tr. at 515.) Claimant reported that the day before his evaluation, he consumed five beers and two long island iced teas,

8

in celebration of his birthday. (Id.) He reported that he lived with his girlfriend of four years and their 18 month old son. (Tr. at 516.) Claimant stated that he quit school at the age of 16 when he was in the tenth grade. (Tr. at 517.) He attended regular classes, never had to repeat a grade, and earned average to above-average grades. (Id.) He reported having had few friends in school and that he never was sociable. (Id.) He stated that he had a lot of disciplinary problems in school. (Id.)

On mental status exam, Mr. Atkinson noted that Claimant was friendly and affable, but somewhat uneasy beneath the surface. (Tr. at 517.) He was tentative and exhibited relevant and coherent speech, though he was hesitant and unsure. (Id.) Mr. Atkinson noted attention problems throughout the evaluation, which suggested ADHD, although he did not meet the diagnostic criteria. (Id.) Claimant was well-oriented, had an anxious and slightly agitated mood, exhibited a broad affect, had normal thought processes and content, and reported audible hallucinations with a one-year history, wherein he heard voices of warning. (Tr. at 518.) Mr. Atkinson assessed normal immediate memory and social functioning, fair insight, mildly deficient judgment, moderately deficient concentration, markedly impaired delayed memory and attention, vague and inexact remote memory, and average persistence and pace. (Id.) He noted that Claimant's psychomotor behavior was normal. (Id.)

The Wechsler Adult Intelligence Scale – Third Edition ("WAIS-IV"), revealed a verbal IQ of 75, a performance IQ of 77, and a full scale IQ of 74. (Tr. at 519.) Mr. Atkinson opined that Claimant's scores were valid due to average effort. (Id.) He noted that Claimant's scores on the Wide Range Achievement Test ("WRAT"), revealed that he had a fourth grade literacy level, with an unclear date of onset. (Id.) Mr. Atkinson noted that Claimant's reading score somewhat fell below his educational expectancy as projected from the IQ test, while his math score, which was at a third grade level, somewhat fell above what was expected. (Id.) Mr. Atkinson noted that

9

Claimant's scores suggested that he was more learning disabled in verbal areas. (Id.)

Mr. Atkinson diagnosed mood disorder NOS (Mood instability with borderline personality disorder and with probable substance-induced component), borderline intellectual functioning, and borderline personality disorder of the antisocial type. (Tr. at 520.) He assessed a GAF of 55. (Id.) He opined that Claimant's prognosis was fair. (Tr. at 521.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find that his right hand deformity was a severe impairment. (Document No. 11 at 11-12.) Claimant asserts that the December 2012, x-rays of his right hand, accompanied by hand swelling, cramping, and difficulty holding objects demonstrated that he had a right hand severe impairment. (Id. at 12.) He also asserts that he began using both hands to hold objects and trained himself to use his left hand dominantly. (Id.)

In response, the Commissioner asserts that the ALJ reasonably found that Claimant's right hand impairment was not severe because it did not limit significantly his physical ability to perform basic work activities. (Document No. 13 at 8-10.) The ALJ noted that although Claimant suffered a fracture to his right hand in 2002, he failed to report any hand pain or cramping until July 2012. (Id. at 9.) Claimant however, reported that he had installed an air conditioner the month before, which would have required the use of both hands. (Id.) The Commissioner notes that Claimant did not complain of his hand again until December 2012, at which time Dr. Anderson noted mild edema and some tenderness. (Id.) The Commissioner notes that x-rays revealed only mild degenerative changes and probable posttraumatic deformities. (Id.) Claimant received only conservative treatment for his hand impairment, by means of pain medications, and no physician

recommended more aggressive therapy or noted reductions in grip strength or range of motion. (Id.) Furthermore, the record is void of any functional limitations assessed by any medical source. (Id. at 10.)

Claimant replies that the objective evidence combined with Claimant's testimony from the administrative hearing supported a step two finding that his right hand impairment was severe. (Document No. 14 at 1-2.) Claimant asserts that the ALJ's error at step two is not harmless because the ALJ failed to consider his hand impairment at the subsequent steps of the sequential analysis. (Id. at 2.)

Claimant also alleges that remand is required for consideration of the evidence from Mr. Atkinson, which was submitted to the Appeals Council. (Document No. 11 at 13-15.) Claimant contends that the additional evidence "pertains to significant mental impairments, which existed but may not have been apparent to [Claimant] himself at the time of his application." (Id. at 13.) Claimant asserts that the evidence consisted of a psychological evaluation in February 2012, which included cognitive testing and diagnoses of mood disorder, alcohol abuse, borderline intellectual functioning, and borderline personality disorder antisocial type. (Id. at 13-14.) He contends that the evidence is material and might reasonably have changed the Commissioner's findings because the ALJ did not consider the severity of his mental impairments. (Id. at 14.) Claimant asserts that he previously submitted the evidence on April 3, 2012, but the records were not exhibited prior to his administrative hearings. (Id.) He contends therefore, that he has shown good cause and a general showing of the evidence. (Id.) Consequently, Claimant contends that remand is warranted. (Id. at 14-15.)

In response, the Commissioner contends that the ALJ reasonably concluded that

Claimant's anxiety and alcohol abuse were non-severe impairments because they caused no more than a minimal limitation in his ability to perform basic mental work-related activities. (Document No. 13 at 10-13.) The Commissioner asserts that Mr. Atkinson's examination has no impact on the ALJ's decision because the additional diagnoses and limitations are inconsistent with and unsupported by Claimant's longitudinal record, which revealed treatment for substance abuse. (Id. at 11.) Prior to 2012, however, Claimant did not receive any mental health treatment. Otherwise, the record reflected very few instances of medication management for anxiety by Dr. Anderson. (Id.) Accordingly, the Commissioner contends that Mr. Atkinson's extreme limitations are not supported by the longitudinal record. (Id.) The Commissioner further notes that the ALJ utilized the special technique regarding Claimant's mental impairments and concluded that he no more than mild limitations, as supported by Claimant's reported activities. (Id. at 12.) Consequently, the Commissioner contends that Claimant's mental impairment was not severe. (Id. at 12-13.)

Analysis.

1. Severe Impairment.

Claimant first alleges that the ALJ erred in failing to find that right hand deformity was a severe impairment. (Document No. 11 at 11-12.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2013). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a

12

routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

      In his decision, the ALJ acknowledged Claimant's complaints of chronic joint pain in his hands and bilateral hand cramping. (Tr. at 15.) He further acknowledged Claimant's testimony at the administrative hearing that he was diagnosed with arthritis in his hand, that it was difficult for him to lift a gallon of milk or soda, that he must use both hands for lifting, and that he has had to use his left, non-dominant hand to eat or write since 2002. (Id.) The ALJ further summarized the minimal evidence of record, which included complaints of pain, weakness, and numbness in October 2010; x-rays in December 2012; examination of the right hand, which revealed only mild edema and tenderness; and pain medication for chronic pain in his hands, hips, legs, and shoulders.

13

(Tr. at 15-16.) The ALJ noted however, that records indicated that his pain was stable with medication. (Tr. at 16.) The ALJ therefore, concluded that there was "no objective evidence to support the alleged severity of the [C]laimant's joint pain complaints or hand complaints." (Id.)

The undersigned finds that the ALJ properly considered Claimant's right hand deformity and that his decision that it was a non-severe impairment is supported by the substantial evidence of record. The record is void of any evidence beyond Claimant's testimony that he had any limitations that resulted from his right hand deformity. The medical evidence, at best, revealed only mild edema, tenderness, and some pain. Radiographic evidence revealed essentially mild degenerative changes. Claimant did not seek any treatment other than pain medication. Accordingly, in view of the limited evidence, the undersigned finds that the ALJ's decision is supported by substantial evidence.

2. Evidence Submitted to the Appeals Council.

Claimant also alleges that remand is required for consideration of Mr. Atkinson's evaluation, which was submitted to the Appeals Council. (Document No. 11 at 13-15.) In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct.

14

at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"[1] If new and material evidence is submitted after the ALJ's decision, the Appeals Council:

> shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.1570(b); 404.970(b) (2013). Evidence is "new" if it is not duplicative or cumulative. Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. The Regulations governing the circumstances under which the

---

[1] Sentence six of 42 U.S.C. § 405(g) provides:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

15

Appeals Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. §§ 404.1570(b); 404.970(b) (2013). This does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).[2]

---

[2] Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the Court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

     To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

As discussed above, the evidence submitted to the Appeals Council consisted of the report from Mr. Atkinson's one-time evaluation of Claimant. Claimant therefore, has made a general showing of the evidence. He asserts that the evaluation report was submitted prior to the issuance of the ALJ's decision, but was not exhibited. Although it was Claimant's burden to ensure that all documents and exhibits relevant to his claims were submitted, the undersigned finds, without determining the propriety of Claimant's argument, that he has shown good cause for his failure to submit the evidence prior to the date of the ALJ's decision. Notwithstanding these positive findings, the undersigned finds that Claimant had not demonstrated how the evidence is material. The ALJ summarized the limited evidence of record regarding Claimant's anxiety and substance abuse, and found that they were not severe impairments because there was a lack of evidence of a significant limitation resulting from the impairments. (Tr. at 16-17.) Treatment records reflect that Claimant was prescribed Xanax for his anxiety in May 2013, and that he underwent alcohol addiction treatment. Claimant testified that he no longer used alcohol. (Tr. at 17.) The ALJ concluded that Claimant had only mild limitations in daily activities, social functioning, concentration, persistence, or pace and no episodes of decompensation of extended duration. (Id.) Accordingly, the undersigned finds that the ALJ's finding of non-severe impairments is supported by the substantial evidence. Mr. Atkinson's evaluation completely is inconsistent with the record evidence, and therefore, the undersigned finds that it is not material to the ALJ's decision. Accordingly, the undersigned finds that remand is not required for further consideration of Mr. Atkinson's evaluation report.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final

17

decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 12, 2016.

18

Omar J. Aboulhosn
United States Magistrate Judge